IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID J. BORLAND | § | |
| | § | |
| V. | § | A-09-CA-364-LY |
| | § | |
| MARVELL SEMICONDUCTOR, INC. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Marvell Semiconductor, Inc.'s Amended Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment (Clerk's Doc. No. 28); Plaintiff's Response to Amended Motion for Summary Judgment (Clerk's Doc. No. 33), Defendant Marvell Semiconductor, Inc.'s Reply in Support of Defendant's Amended Motion for Summary Judgment (Clerk's Doc. No. 40); Plaintiff's Objections and Motion to Strike Defendant's Summary Judgment Evidence (Clerk's Doc. No. 34), Marvell's Response in Opposition to Plaintiff's Objections and Motion to Strike (Clerk's Doc. No. 48), and Plaintiff's Reply to Defendant's Response (Clerk's Doc. No. 46). On September 17, 2010 the District Court referred the motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

This case centers on a contract dispute arising out of an incentive agreement. Plaintiff David Borland filed this breach of contract suit claiming his former employer, Marvell Semiconductors, Inc., owes him a performance bonus under the agreement. Marvell is moving for summary

judgment, contending first that the facts are undisputed and demonstrate that Borland's group did not meet the financial milestone required to earn the bonus, and second, that Borland's various estoppel claims should be rejected. In response, Borland argues that there are fact issues concerning whether he met the performance goal during the relevant quarter, and that Marvell should be precluded from contending here that he failed to meet the goal because its internal financial reports demonstrate that the goal was reached.

## II. Standard of Review

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III.  Evidentiary Objections

Along with his response, Borland has also filed his Objections and Motion to Strike Defendant's Summary Judgment Evidence. The objections and motion address three items: a profit and loss statement that Marvell has submitted in its motion (Exhs. E & G-N to Marvell's motion), portions of the declaration of C.L. Wey (Exh. F), and portions of the deposition of Fran Nguyen (Exh. B).

Borland complains that the new P&L documents are not business records, as they were created for purposes of this case. He also complains that "Marvell has not merely printed out raw

data maintained in a computer database but has instead made tactical decisions as to which expenses to include and how to reclassify such expenses to support its litigation arguments." Marvell responds by pointing out that the P&L documents are properly admitted as summaries of a voluminous record under FED. R. EVID. 1006. Marvell further notes that Borland fails to dispute the declaration of C.L. Wey that all of the data in the P&L documents came from Marvell's Oracle Database, and the information in that database meets the definition of a business record. The Court agrees, and thus overrules Borland's objections to the P&L documents. Borland's objection goes to the weight the fact finder should give the records, and not to their admissibility.

As to Wey's declaration and Nguyen's deposition, Borland objects to several statements that Borland contends are either conclusory or unsupported. Once again, these objections go the weight of the evidence, not its admissibility. The Court understands that it is for the Court to decide whether an expense qualifies as a deduction from gross margin for purposes of the milestone calculation, and that it is not bound by Wey's and Nguyen's statements that Marvell has "properly" calculated the figures, or that something is "consistent" with the bonus letter. These objections are thus also overruled, and Borland's Motion to Strike this evidence (Clerk's Doc. No.34) is DENIED.

## IV. Facts

As noted above, the Court may not resolve factual disputes at this stage of the litigation. Instead, it must draw all reasonable inferences in favor of the nonmovant Borland. Most of the facts in this case are not truly in dispute—all of the relevant data comes from Marvell and its financial records. Further, the parties agree on the relevant language of the contract, and neither of them contend that the contract language is ambiguous. Finally, only the second quarter of 2009 is in issue. Thus, this case presents a narrow issue: Did Borland meet the milestone in Q209, and, more

specifically, which expenses are properly considered in the calculation of the Cellular and Handheld Group's "break-even point" for that quarter?

The contract in this case is actually a combination of two retention letters sent to Borland and another executive (Sam Arditi) after Marvell acquired Intel's Cellular and Handheld Group, which had previously employed both Borland and Arditi. Marvell wished to retain both executives, and as an incentive for them to stay, offered each of them a retention bonus and a milestone bonus. The bonus in dispute is the milestone bonus. The relevant letter states that Borland would be entitled to receive a significant milestone bonus payable "when the Cellular and Handheld Group reaches the *break-even point*." Letter from Michelle Oakes to David Borland, July 17, 2006 (Exh. C to Borland's Motion) (emphasis added). Interestingly, Borland's letter did not define how to calculate the "break-even point." However, in Arditi's letter, which also created a milestone bonus, Marvell's representative details how to calculate the break-even point:

> For purposes of determining your eligibility for the milestone bonus, "Break-Even Point" shall means [sic] pre tax and interest operating profit break even calculated as gross margin less direct R&D and direct General and Administration cost (such as division GM and finance). Operating profit shall not include costs or credits related to the purchase accounting. The break even point is calculated on a quarterly basis for Marvell's fiscal quarters and is not cumulative.

Letter from Michelle Oakes to Sam Arditi, October 27, 2006 (Exh. D to Borland's Motion). The parties agree that this definition in Arditi's letter controls for Borland's letter as well.

While the parties agree that the language in Arditi's letter controls, and that the contract language is unambiguous, they disagree on how each component of the calculation should be determined. Thus, their calculations vary by millions of dollars. In a nutshell, Borland contends that internal financial documents circulated by Marvell to management (including Borland) demonstrate

5

that the CHG in fact met the "break even point" in Q209, and that Marvell's contention that the milestone was not met is based upon a selective interpretation of all three components of the calculation ("gross margin" "direct R&D," and "direct General and Administration cost"). Marvell's contention is that the relevant data is not in dispute, that Borland is mis-reading the internal records circulated to him, and the appropriate data clearly demonstrates that the CHG missed the break-even point in Q209 by many millions of dollars. Thus, the dispute centers on whether certain costs are properly considered in the calculation of "gross margin," "direct R&D," and "direct General and Administration cost." While it is not entirely clear whether these disagreements pose fact questions or legal disputes, as is explained in more detail in the next section, there is no doubt that—however they are characterized—these issues are not appropriately resolved at this summary judgment stage of the case.

## V. Analysis

### A.   Breach of Contract Claim

As mentioned, neither party argues that the contract language is ambiguous. This does not bind the Court, however, and it may independently reach the opposite conclusion, *Plotkin v. Joekel*, 304 S.W.3d 455, 475 n.10 (Tex. App.—Houston [1st Dist.], no pet.). "Whether a contract is ambiguous is a legal question for the court." *Dynergy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). If the contract is unambiguous, then the court construes it "as a matter of law." *Id.*

On their face, each of the words which make up the relevant contract language appear unambiguous. For example, "gross margin" seems rather straightforward, particularly given that the parties agree on its make-up—CHG's gross revenue less the cost of goods sold. Likewise, the phrase

"direct R&D" seems to be of fairly clear meaning, as does "direct General and Administration cost." On the other hand, the parties reach wildly different conclusions from this language. Further, each party agrees that generally accepted accounting practices are not applicable to the calculation of the break-even point, as the contract created a unique definition that does not have a standard accounting meaning. Because the Court cannot look to GAAP or other accounting resources to flesh out the concept of "direct R&D" or "direct General and Administration cost," it may in fact be that these terms are insufficiently precise to allow an objective third party to make the relevant calculation, and thus that the contract language is ambiguous.

Moreover, there appear to be rather obvious fact questions regarding whether certain expenses are appropriately included within these categories. For example, Borland offers evidence that Marvell closely tracked its financial performance and regularly circulated financial data to management. Among that data were reports identifying such categories as "standard GM" (gross margin), and "R&D spending," which included lines for "direct expenses" and "indirect expenses." See Exhs. A-2 & A-3 to Borland's Response. Borland points out that the figures on these reports for the second quarter of 2009 are quite different than the figures that Marvell now argues should control the calculations. These discrepancies create a fact question for the fact finder to resolve—which is the correct report of gross margin, or direct R&D spending?

There are additional, significant disagreements on the numbers. For example, Borland notes that in its "direct R&D" and "direct General and Administration cost" figures Marvell includes items he contends are indirect costs. These include the costs referred to as "R&D Ops," which represent costs incurred by the Operations group that is under different management than, and which is a distinct group from, the CHG. That group worked on many other products than those designed by

the CHG, and thus its expenses are allocated out to other groups on an apportioned basis. Another example are the costs Marvell has identified as "Facilities/IT/GM/Fringe." Marvell originally identified these expenses in internal financial reports as "indirect R&D," but, as indicated in the Nguyen deposition, after further discussions (following Borland's suit), Marvell reclassified these expenses as "direct G&A." Similar disagreements exist regarding the costs of CAD (computer assisted design) licenses, the expenses of a group of employees who were added to the CHG (the PHS group), and the proper classification of Field Application Engineers. All of this evidence creates fact issues regarding how these expenses should be classified, and whether they are properly included in the break-even calculation. Moreover, Borland contends that Marvell's accounting records routinely assigned all expenses a prefix of one through five, to sort them into five categories: Operations, General and Administrative, Marketing, Sales, and Research & Development. He argues, and the records reflect, that expenses that Marvell now argues fit within "R&D" or "General and Administrative" were not so classified when they were recorded in Marvell's ledgers.

     Given the lingering question of whether the contract terms are ambiguous, and given the factual disputes catalogued above, summary judgment is inappropriate at this time. Moreover, from the standpoint of judicial efficiency and economy, entering a summary judgment would be imprudent. The parties have waived a jury in this case, and the trial of the case will be to the Court. It thus makes much more sense for the relevant evidence to be presented to the trial judge, and to allow him to determine, after hearing all of that evidence, whether the contract terms are ambiguous, and which expenses belong in which categories. And with a complete trial record, the parties are assured that the trial judge's conclusions will not be overturned because of a fact dispute, as could

easily be the case if a summary judgment were entered. For all of these reasons, the undesigned recommends that Marvell's Amended Motion for Summary Judgment be DENIED.

### B. Estoppel Claims

Marvell also moves for partial summary judgment on Borland's estoppel claims. These claims were added in the Amended Complaint, with the following language:

> Moreover, and in the alternative, in an effort to deny that the "break even" milestone was achieved, Marvell has now attempted to manipulate its accounting terms and principles to increase the expenses allocable to Borland's group, adopting accounting positions that contradict its prior practices, in violation of principles of promissory estoppel, equitable estoppel, and quasi-estoppel.

Plaintiff's First Amended Complaint (Clerk's Doc. No. 19) at 2.[1] Marvell argues that (1) there is no evidence that it ever made any false statement to Borland regarding the calculations and this is an essential element of an equitable estoppel claim; and (2) the quasi-estoppel claim fails because Marvell has always maintained its position that CHG did not reach the break-even point, and since the definitions in the letter are unique, its previous financial calculations and analyses are not determinative. Defendant's Amended Motion at 11. As Marvell puts it,

> "the definition in the Letter is not a standard accounting definition; therefore, any calculations undertaken pursuant to that definition would, of necessity, be unique. Any other accounting analyses conducted by Marvell for other purposes are irrelevant to the question of whether CHG reached the break-even point during Plaintiff's employment."

*Id*. at 12.

Equitable estoppel would allow Borland to recover if Marvell (1) made a false representation or concealed material facts, (2) with knowledge of those facts, (3) with the intention that it be acted

---

[1]In his Response, Borland abandons a promissory estoppel claim given that Marvell does not dispute the existence or enforceability of the contract. Plaintiff's Response at 18 n.61. The issues on this question are therefore limited to the doctrines of equitable and quasi-estoppel.

on, (4) to Borland, (5) who detrimentally relied on the representation or concealment. *Ulico Cas. Co. v. Allied Pilots Assn'n*, 262 S.W.3d 773, 778 (Tex. 2008). This theory requires reliance, and Borland has not submitted any evidence that he detrimentally relied on Marvell's classifications. He used Marvell's reports to "see that CHG was accomplishing his assigned goals," but he does not demonstrate that the reports affected his behavior. Plaintiff's Response at 18. This is insufficient to show reliance. Thus, to the extent Borland is pursuing an independent, stand alone equitable estoppel claim (which his First Amended Complaint purports to do), summary judgment on that claim is appropriate.

Quasi- estoppel, unlike equitable estoppel, does not require misrepresentation or detrimental reliance. *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765–66 (Tex. App.—Texarkana 1992, writ denied). It "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Mexico's Indus., Inc. v. Banco Mexico Somex, S.N.C.*, 858 S.W.2d 577, 581 n.7 (Tex. App.—El Paso 1993, writ denied). Quasi-estoppel applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Borland contends that application of this doctrine should prevent Marvell from arguing that expenses should be classified in any manner other than as reflected in the periodic reports Marvell circulated to management. Essentially, he is asking that Marvell be prevented from contending that its "direct R&D" for Q209 was anything other than the figure contained on the internal report for that period, and likewise for the other components of the break-even calculation.

Borland's argument is flawed, in that he fails to demonstrate that Marvell accepted or received any benefit from the contents of the internal financial reports it circulated to management. The internal reports were clearly used to allow management to track the performance of the company and its various groups, not for any other purpose. Thus, by issuing the reports, Marvell has not taken the sort of position that the quasi-estoppel doctrine forbids a party from later retracting. Further, there would be nothing "unconscionable" about Marvell taking in a position in this litigation on the figures different from that it took in the internal reports. This is not to say that it would be persuasive for Marvell to take a position at trial contrary to that taken in the internal reports, but rather the Court is merely concluding that Marvell is not precluded as a matter of law from varying or refining its position regarding the components of the break-even calculation from the figures in the internal reports. There is no question that the internal reports are relevant and admissible evidence on these issues; they are not, however, the *only* evidence that should be permitted on those issues. Thus, the Court believes that summary judgment on the quasi-estoppel claim should be granted as well.

## VI. Recommendation

For the reasons set forth above, the undersigned RECOMMENDS that the District Court DENY Marvell's Motion for Summary Judgment on Borland's breach of contract claim, The undersigned FURTHER RECOMMENDS that the District Court GRANT Marvell's Alternative Motion for Partial Summary Judgment, and enter summary judgment in Marvell's favor as to Borland's equitable and quasi-estoppel claims. FINALLY, IT IS RECOMMENDED that Borland's promissory estoppel claim be dismissed without prejudice as MOOT.

## VII.  Warnings

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C) (2006); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009).  To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of November, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE